## Joseph Simon, Administrator, Appellee v. The Aurora, Elgin & Chicago Railroad Company, Appellant.

### Gen. No. 17,383.

RAILROADS—*negligence in crossing tracks.* Evidence in an action for the death of one struck by a suburban train, *held* to show that deceased was deliberately attempting to cross the tracks in front of the train when it was almost upon him to reach a platform and was guilty of contributory negligence.

Appeal from the Superior Court of Cook county; the Hon. PAUL McWILLIAMS, Judge, presiding. Heard in this Court at the March term, 1911. Reversed with finding of fact. Opinion filed May 26, 1913. Rehearing denied June 9, 1913.

HOPKINS, PEFFERS & HOPKINS, for appellant.

DAVID R. LEVY and GEORGE E. GORMAN, for appellee; DOUGLAS C. GREGG, of counsel.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

This is an appeal by the defendant from a judgment against it for $9,000 for causing the death of Abraham Levin.

Among the grounds of negligence averred in the various counts of the declaration were careless and negligent manner of running and operating its train, running at a high and dangerous rate of speed, failure to ring bell or give warning of the approach of the train and failure to provide and have burning a headlight on the said train.

The plaintiff called two witnesses. Mrs. Levin, the widow, testified pertaining to the next of kin and the earnings of the decedent. The other witness, Hyman Markovich, lived on 13th avenue, a north and south avenue, about a block north of Madison street, an east and west street, in Maywood. He testified that the decedent came to his house, with a companion named Jacobson, in the afternoon of December 12, 1907; that

Simon v. The A., E. & C. R. Co., 180 Ill. App. 444.

they left his house about 7:15 that evening to go to the defendant's 13th avenue station to take a 7:26 or 7:27 local east bound train into Chicago; that an express train was due to pass 13th avenue at 7:15; that it was a long block from Madison street south on 13th avenue to the defendant's tracks and just north of the defendant's tracks were the Chicago and Great Western Railway tracks; that there was a small platform on the north side of the defendant's north tracks on the west side of 13th avenue for the use of passengers for west-bound trains and the platform for east-bound trains was south of the defendant's south track and east of the platform for west-bound trains, and there were no houses on either side of 13th avenue between Madison street and the defendant's tracks, and it was an open prairie and there was a clear view for a mile or two to the west along defendant's tracks; that on the south side of Madison street was a fence across 13th avenue, in which there was a gate for people to pass through and a three plank sidewalk on 13th avenue south of Madison street to the railway tracks, that on the evening in question he went with the decedent and Jacobson south on 13th avenue across Madison street and when about 150 or 160 feet south of Madison street and about 50 or 60 feet north of the Great Western tracks, he stopped to urinate and the decedent and Jacobson said good night to him and walked on south; that while he stood there facing southeast he heard a low whistle to the west and looked west, but saw no train coming, nor a headlight, and after that he did not look to the west again and heard no other whistle or other noise of the train approaching, and neither did he see it until about a minute or a minute and a half after he heard the low whistle, when he saw the lights in the side windows of the cars as the train went very fast across 13th avenue; that the night was not very dark and there were bright lights at the Great Western station, and he saw decedent and Jacobson when about 10 or 15 feet south of him and again when

they were walking across the Great Western tracks
and did not see him again until, thinking the train had
not stopped for them, he went at once to the tracks and
found the decedent had been killed and Jacobson also
had been struck by the train causing injuries from
which he subsequently died. We think the foregoing
an accurate statement of the material testimony given
by Markovitch, and with the admission of the defend-
ant that at the time in question when the train struck
the decedent it was going forty miles an hour, the case
was submitted by the plaintiff.

Eugene Wicks, a witness for the defendant, testified
that he was a contractor and at the time of the acci-
dent he was south of the defendant's tracks with his
wife and baby walking north on 13th avenue, going to
the station to take a train for Chicago; that he first
saw the headlight of the defendant's train when it was
about 3½ miles to the west and it disappeared for
about a half a minute, when he again saw it, and from
then on until the train passed the headlight was con-
tinuously in sight; that there was a whistle from the
train when it was about a mile and a half away and
after that three or four other whistles, the last time
being at 13th avenue; that when he first saw the dece-
dent and Jacobson he was about 125 or 130 feet south
of the defendant's tracks and "they were coming on a
sort of a trot" about 25 to 35 feet north of the defend-
ant's tracks and south of the Great Western tracks;
that the men seemed to hesitate and then came run-
ning on the defendant's track and there was a crash;
that he then stopped with his wife and baby and did
not go up to the crossing until later to take the train
home. George Engleman, a witness called by the de-
fendant, testified that he was walking north on 13th
avenue, about four blocks south of the defendant's
tracks, when he first saw the train in question coming
up over the hill at the county line; that he continued
walking north and he first saw one of the men com-
ing south about thirty yards north of defendant's

tracks, and at that time the train was between 13th and 17th avenues; that the last time the whistle blew before the accident was just before the train reached 17th avenue, and the headlight was burning; that he could not say how they were coming and did not know that there were two men until after the accident; that he was about thirty yards south of the tracks when he saw one man on the track when the train was twenty to forty feet away; that he saw something was going to happen and took hold of a little tree, "and I stood right there and it struck those men and he went right up in the air and he dropped right on the platform. Fred Meyer, the motorman of the train, testified that he was due to pass 13th avenue station at 7:45 and was running on schedule time, and not late; that the headlight was burning and as he came east toward the 13th avenue station he whistled at various times; that when he first saw the two men they were about eight feet north of the east-bound track and running fast to the south, one trailing the other about three feet apart, and at that time the witness was about a car length from the crossing and "immediately threw my air into the emergency;" that at the time the power was off and the air partly on to take the curve about 200 feet east of the 13th avenue crossing and at the time was running about forty miles an hour.

These witnesses were the only witnesses testifying in relation to the accident. The witness Markovich for the plaintiff, accepting his testimony as true, did not in fact see the accident or anything in relation thereto after he saw the decedent and Jacobson on the Great Western tracks, until it was all over; neither was he in a position to see it or the approach of the train, although it seems somewhat strange that under all the circumstances he did not hear any sound of the approaching train except the one low whistle. That being the case made by the plaintiff, it is manifest that the evidence introduced by the defendant proves that the decedent deliberately ran upon the track in

front of the said train. It is undoubtedly true that the decedent expected to be able to cross safely and intended to reach the platform on the other side of the track, and to do this he evidently took the chance of running ahead of the train when it was so close as to be almost upon him. It seems to us that the decedent was clearly guilty of contributory negligence and it must be so held regardless of the misery arising from an occurrence so unfortunate and distressing.

From the view we take of the case, the questions of the defendant's negligence and the other errors assigned and argued need not be discussed.

The judgment is reversed with a finding of fact.

*Reversed with finding of fact.*